[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 21, 2005
THOMAS K. KAHN
CLERK

No. 04-12966
Non-Argument Calendar

_____

D.C. Docket No. 03-60280-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES JASON COALE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 21, 2005)**

Before ANDERSON, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Charles Jason Coale appeals his 60-month sentence, imposed after he pled

guilty to possession of chemicals, products, and materials which may be used to

manufacture methamphetamine, in violation of 21 U.S.C. §§ 843(a)(6) and (d)(2).

On appeal, Coale argues that the district court: (1) erred in applying the offense Guideline's cross-reference for manufacturing a controlled substance; and (2) violated United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), by improperly enhancing his sentence based on facts that were not admitted by him in his plea agreement. After review, we affirm.

## I. BACKGROUND

### A. Plea Colloquy

Pursuant to a written plea agreement, Coale pled guilty to possession of chemicals, products, and materials which may be used to manufacture methamphetamine, knowing, intending, and having reasonable cause to believe that such chemicals, products, and materials would be used to manufacture methamphetamine. During the plea colloquy, the government set forth the following facts, which Coale admitted as true.

On December 5, 2003, the Drug Enforcement Agency ("DEA") executed a search warrant of a Coconut Creek, Florida, apartment and found a dismantled methamphetamine laboratory. Some of the items the DEA agents found included: (1) numerous pieces of glassware; (2) iodine crystals; (3) pseudoephedrine; and (4) other items used in the manufacture of methamphetamine. The items were located in a common area of the apartment, and had been placed in a large plastic

2

storage container.  The DEA agents also discovered numerous personal documents and items in defendant Coale's name in a bedroom in the apartment.  Also in the bedroom were multiple pseudoephedrine tablets and two clear vials containing methamphetamine residue.

Prior to executing the search warrant, DEA agents observed defendant Coale and co-defendant David Bryant leaving the apartment.  Coale was detained at the scene and was found to be in possession of small bags containing a white substance that tested positive for the presence of methamphetamine.

## B.    PSI and Sentencing

According to the Presentence Investigation Report ("PSI"), co-defendant Bryant admitted that he had manufactured methamphetamine and Coale admitted that he resided in the searched apartment.  Further, the search of the apartment and Coale's person resulted in the confiscation of 1.36 grams of methamphetamine,[1] and materials sufficient to manufacture 46.3 grams of methamphetamine.  Accordingly, the PSI held Coale accountable for 47.66 grams of methamphetamine.

---

[1]One gram of methamphetamine was found in the apartment bedroom and 0.36 grams were found on Coale's person.

Section 2D1.12 of the Guidelines applies to the offense of possession, manufacture, distribution, transportation, exportation, or importation of chemicals, products, and materials which may be used to manufacture methamphetamine. Section 2D1.12(c)(1) provides that if the offense involved the manufacture of a controlled substance, the base offense level in § 2D1.1 should be used, as follows:

> If the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking) if the resulting offense level is greater than that determined above.

U.S.S.G. § 2D1.12(c)(1). The commentary to § 2D1.12 defines the phrase "offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully" as used in § 2D1.12(c)(1), as follows:

> "Offense involved unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully," as used in subsection (c)(1) means that the defendant, or a person for whose conduct the defendant is accountable under [U.S.S.G.] § 1B1.3 (Relevant Conduct), completed the actions sufficient to constitute the offense of unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully.

U.S.S.G. § 2D1.12, cmt. n.2.

Thus, the PSI applied the cross-reference to U.S.S.G. § 2D1.1 and recommended a base offense level of 24 pursuant to § 2D1.1(c)(8). With a three-

level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, Coale's total offense level was 21. With a criminal history category of VI, Coale's Guidelines range was 77-96 months' imprisonment.

Prior to sentencing, Coale objected to the PSI's failure to recommend a four-level minimal-role reduction, pursuant to U.S.S.G. § 3B1.2. At sentencing, the district court granted a three-level role reduction, which reduced Coale's offense level to 18 and his Guidelines range to 57-71 months' imprisonment.

Also prior to sentencing, Coale objected to the application of the § 2D1.12(c)(1) cross-reference to § 2D1.1, contending that the cross-reference did not apply to him because he had not pled guilty to a crime that included an intent to manufacture methamphetamine as an element. The government conceded that it could not establish that Coale had himself manufactured methamphetamine, but argued that Coale had pled guilty to possession of manufacturing equipment, and that the relevant conduct provided a sufficient basis for application of the cross-reference. The government also noted that Coale's co-defendant Bryant had admitted to manufacturing methamphetamine.

In arguing for application of the cross-reference, the probation officer also emphasized Coale's relevant conduct, asserting that Coale and Bryant were in the business of manufacturing and distributing methamphetamine. The probation

officer further pointed out that Coale had been found in the possession of methamphetamine packaged in small baggies.[2]

The district court determined that the § 2D1.12(c)(1) cross-reference to § 2D1.1 applied for the reasons stated by the probation officer. Noting a lengthy history of drug-related offenses, the district court sentenced Coale to 60 months' imprisonment, followed by 3 years' supervised release.

## II. DISCUSSION

### A. Section 2D1.12(c)(1) Cross-Reference

On appeal, Coale argues that the district court erred in applying the offense Guideline's cross-reference for manufacturing a controlled substance, contending that his base offense level should have been determined by the offense Guideline's own specifications, set forth in U.S.S.G. § 2D1.12(a)(2).[3] Coale asserts that the

---

[2]Specifically, the probation officer stated:
The offense, as a whole, these two individuals were in the business of manufacturing and distributing methamphetamine. Nobody's disputing that, except the fact that this defendant might not have actually manufactured it. The drugs were found on this defendant. They were packaged in small baggies on this defendant.

There was another gram of methamphetamine found in the defendant's bedroom. So clearly, with the relevant conduct, the Guidelines state if the offense involved the manufacture of methamphetamine. It's the position of the probation officer that the Guidelines state that this cross-reference should be utilized.

[3]We review the district court's factual findings for clear error, and review de novo the application of those facts to the Sentencing Guidelines. United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995).

cross-reference in § 2D1.12(c)(1) did not apply to him because his offense of conviction did not require, as an element of proof, that he intended to manufacture methamphetamine. Coale concedes that he knew the chemicals he possessed would be used to manufacture methamphetamine, but submits that he never manufactured methamphetamine himself.

As stated above, Coale's offense Guideline was U.S.S.G. § 2D1.12, the Guideline for possession of chemicals, products, and materials which may be used to manufacture methamphetamine. However, the district court found that because Coale's conduct also involved the manufacture of methamphetamine, the cross-reference in U.S.S.G. § 2D1.12(c)(1) to U.S.S.G. § 2D1.1 should be applied. Section 2D1.12(c)(1) provides that if the offense involved the manufacture of a controlled substance, the base offense level in § 2D1.1 should be used.

As noted earlier, the commentary to § 2D1.12 states that the cross-reference should be applied if "the defendant, or a person for whose conduct the defendant is accountable under [U.S.S.G.] § 1B1.3 (Relevant Conduct), completed the actions sufficient to constitute the offense of unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully.

U.S.S.G. § 2D1.12, cmt. n.2.[4]  Thus, in determining whether to apply the cross-reference in U.S.S.G. § 2D1.12(c), the district court was required to consider all of Coale's relevant conduct, including his joint enterprise with Bryant to manufacture and distribute methamphetamine.  Nothing in the cross-reference or the Guideline commentary requires that the cross-reference be applied only when the manufacture or attempted manufacture of controlled substances is an element of the offense of conviction.

The district court's decision to impose the cross-reference was based on a number of factors, including that: (1) Coale had possessed materials used in manufacturing methamphetamine; (2) Coale admitted to possession of those materials knowing, intending, and having reasonable cause to believe that such

---

[4]The Guideline defining relevant conduct provides, in pertinent part, as follows:
Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
(B) in the case of jointly undertaken criminal activity, (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
U.S.S.G. § 1B1.3(a)(1).

chemicals, products, and materials would be used to manufacture methamphetamine; (3) a disassembled methamphetamine laboratory had been found in an apartment Coale admitted was his; (4) Coale's co-defendant admitted manufacturing methamphetamine; (5) Coale himself had been found in possession of small baggies containing methamphetamine; and (6) one gram of methamphetamine had been found in Coale's bedroom. All of these facts fall within the offense conduct or, at a minimum, relevant conduct.

Thus, the district court's finding that Coale's offense involved the manufacture or attempted manufacture of methamphetamine was not clearly erroneous, and its application of the § 2D1.12(c)(1) cross-reference to Coale's case was not legal error. Accordingly, the district court properly applied the cross-reference to § 2D1.1 found in § 2D1.12(c)(1).

## B.    **Booker Error**

For the first time on appeal, Coale argues that his sentence violates Booker because the district court applied the cross-reference based on facts neither admitted by him nor found by a jury beyond a reasonable doubt. Therefore, we review Coale's Booker argument for plain error. United States v. Rodriguez, 398

9

F.3d 1291, 1297-98 (11th Cir. 2005), <u>cert. denied</u>, – S. Ct. – , 2005 WL 483174

(U.S. June 20, 2005).[5]

Under <u>Booker</u>, "there are two types of sentencing errors: one is

constitutional and the other is statutory." <u>United States v. Dacus</u>, 408 F.3d 686,

688 (11th Cir. 2005). "[T]he Sixth Amendment right to trial by jury is violated

where <u>under a mandatory guidelines system</u> a sentence is increased because of an

enhancement based on facts found by the judge that were neither admitted by the

defendant nor found by the jury." <u>Rodriguez</u>, 398 F.3d at 1298. The statutory

error occurs when the district court sentences a defendant "under a mandatory

Guidelines scheme, even in the absence of a Sixth Amendment enhancement

violation." <u>United States v. Shelton</u>, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

In this case, there is a Sixth Amendment violation because the district court

applied the cross-reference, thereby enhancing Coale's sentence based on its fact-

finding that Coale's relevant conduct involved the manufacture of

methamphetamine. If Coale had been sentenced under U.S.S.G. § 2D1.12, without

---

[5]To establish plain error, the defendant must show "'(1) error, (2) that is plain, and (3) that affects the defendant's substantial rights.'" <u>Rodriguez</u>, 398 F.3d at 1297-98 (quoting <u>United States v. Cotton</u>, 533 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002)). "'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>Id.</u> (quoting <u>Cotton</u>, 535 U.S. at 631, 122 S. Ct. at 1785).

the cross-reference, his base offense level would have been 9.[6]  However, the district court applied the cross-reference based on its findings of fact, which increased Coale's base offense level to 24, thereby enhancing Coale's sentence. The Sixth Amendment violation stemmed from the fact that the district court applied the cross-reference under a mandatory Guidelines system.  Rodriguez, 398 F.3d at 1298.

Because a Sixth Amendment violation exists in this case, Coale has established the first two prongs of plain-error review.  Rodriguez, 398 F.3d at 1298-99.  However, as to the third prong, Coale has not established that the Booker error affected his substantial rights.  The third prong of the plain-error test "almost always requires that the error must have affected the outcome of the district court proceedings."  Id. at 1299 (quotation marks and citations omitted). "The standard for showing that is the familiar reasonable probability of a different result formulation, which means a probability sufficient to undermine confidence in the outcome."  Id. (quotation marks and citations omitted).

In this particular case, the sentencing record provides no basis for a conclusion that Coale has shown a reasonable probability of a more lenient

---

[6]Pursuant to U.S.S.G. § 2D1.12(a)(2), the defendant's base offense level is 9 "if the defendant had reasonable cause to believe the prohibited flask, equipment, chemical, product, or material was to be used to manufacture a controlled substance."  U.S.S.G. § 2D1.12(a)(2).

11

sentence under an advisory Guidelines scheme. The district court did not sentence Coale to the low-end of the Guidelines range and did not make any comments indicating that the Guidelines sentence was too severe. Cf. Shelton, 400 F.3d at 1332-33 (concluding that defendant met the third prong of plain error where district court sentenced defendant at the low end of the Guidelines range and commented on the severity of the sentence). Instead, the district court specifically noted that Coale had a criminal history including "a number of drug offenses."

Upon careful review of the record and the parties' briefs, we find no reversible error and affirm Coale's sentence.

**AFFIRMED.**